

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 19, 2022

By ECF

The Honorable Frederick Block
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:    United States v. Yinghang Yang
                 Criminal Docket No. 20-531 (FB)

Dear Judge Block:

      The government respectfully submits this letter in advance of sentencing of the defendant Yinghang Yang in the above-captioned case, which is scheduled for April 22, 2022 at 3:00 p.m.  For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 30 to 37 months' imprisonment.

I.      Factual Background

      The defendant was employed as a senior index analyst at S&P Global, a publicly-traded corporation headquartered in New York, New York, that specialized in financial information and analytics.  (Presentence Investigation Report ("PSR") at ¶¶ 5, 6).  S&P Global published a number of market indices, including American stock market indices based on the market capitalizations of various companies, also known as issuers, with shares listed on the New York Stock Exchange or the NASDAQ Stock Market.  (Id.).  In connection with his employment, the defendant had access to information about issuers that were scheduled to be either added to, or removed from, market indices published by S&P Global before that information became public.  (Id.).

      Between in and about April 2019 and October 2019, the defendant engaged in a fraudulent scheme whereby he executed securities transactions in a brokerage account (the "Co-

1

Conspirator Brokerage Account") held by a co-conspirator ("Co-Conspirator") based on material non-public information that the defendant obtained in the course of his employment at S&P Global about issuers who were scheduled to be added to, or removed from, market indices published by S&P Global. (PSR ¶ 31). Specifically, the defendant helped Co-Conspirator establish and fund the Co-Conspirator Brokerage Account, which subsequently engaged in a series of securities transactions related to 14 issuers that were either added to, or removed from, various market indices published by S&P Global (the "Index Issuers"). (Id. ¶¶ 32-39). The transactions generally followed a set pattern: first, the Co-Conspirator Brokerage Account would purchase either call options or put options in a particular Index Issuer, depending on whether the Index Issuer was to be added to or removed from a certain market index published by S&P Global. (Id. ¶ 40). Second, after market hours on the same day, S&P Global would announce that the Index Issuer would either be added to, or removed from, a certain stock market index; the addition to or removal from that stock market index would cause the Index Issuer's stock to either increase or decrease in price, as any index fund tracking that market index would either purchase or sell the Index Issuer depending on whether the Index Issuer was added to or removed from that index. (Id. ¶¶ 29, 40). Finally, shortly after the announcement, the Co-Conspirator Brokerage Account would liquidate its position in the Index Issuer, generally resulting in profits to the Co-Conspirator Brokerage Account. (Id. ¶ 40).

In total, the Co-Conspirator Brokerage Account realized approximately $912,082 in gains from the trades that the defendant conducted with material nonpublic information obtained from S&P Global. (Id. ¶ 59). The defendant used funds from the scheme for personal expenses, including to make credit card payments, to pay student loans and to fund trading activity in his personal brokerage account. (Id. ¶ 57).

II.     Sentencing Guidelines Range

The government respectfully submits that the Guidelines calculation set forth in the PSR, and as set forth below, is correct.

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2B1.4) | 8 |
| Plus:  Gain Exceeded $550,000 (§2B1.1(b)(1)(H)) | +14 |
| Less:  Acceptance of Responsibility (§§ 3E1.1(a) and (b)) | -3 |
| Total Offense Level: | 19 |

The defendant has a criminal history score of zero, and thus a criminal history category of I. (PSR ¶ 77). Based on a total offense level of 19 and a criminal history category of I, the defendant's Guidelines range of imprisonment is 30 to 37 months. (PSR ¶ 110). Probation recommends a sentence of 30 months' imprisonment. (See Probation Department Sentence Recommendation). In addition, a preliminary order of forfeiture as already been entered against the defendant in the amount of $912,082. (See Docket No. 22).

III.    The Appropriate Sentence

        Given the seriousness of the conduct here, to provide just punishment, to promote respect for the law and effect adequate deterrence, the government respectfully recommends a sentence within the applicable Guidelines range.

    A.    The Applicable Law

        It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

        Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct; [and]

        (C)    to protect the public from further crimes of the defendant.

        Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

        It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the

3

correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

  B. <u>Application</u>

   The defendant's conduct in this case was serious. The defendant was an employee of a publicly-traded corporation that was responsible for publishing market indices that are closely watched by financial institutions and governments worldwide and that serve as indicators for global and local economies, as well as benchmarks for institutional investors like pension funds. In that role, the defendant was privy to extremely sensitive and non-public information about companies that were going to be added to, and removed from, those indices, which would have an impact on the value of those companies as well as the relevant index as a whole. He was trusted to treat that information confidentially and not to use it for his own personal benefit. Instead, the defendant breached that trust, using his privileged position to financially benefit from those changes in the market indices published by S&P Global before those changes were made public.

   The need for just punishment, to promote respect for the law, and to deter the defendant and other corporate insiders from personally benefitting from the non-public corporate information with which they are entrusted, weighs heavily in favor of a Guidelines sentence, including a sentence of incarceration. Without such consequences, there would be little incentive for individuals like the defendant to not at least try to trade on the material nonpublic information to which they have access, knowing that if they got caught—and such crimes are extremely difficult to detect—they would simply have to pay back what they illegally obtained. A Guidelines sentence here will send a message that individuals like the defendant who have the opportunity to beat the market by cheating must resist doing so, and need to follow the rules like everyone else.

IV. <u>Conclusion</u>

   For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Sentencing Guidelines range that is sufficient, but not greater than necessary, to achieve the goals of sentencing. <u>See</u> 18 U.S.C. § 3553(a)(2).

               Respectfully submitted,

               BREON PEACE
               United States Attorney

          By:  /s/ Alixandra Smith
               Alixandra Smith
               Assistant U.S. Attorney
               (718) 254-6370

cc: Defense Counsel (by e-mail and ECF)
   United States Probation Officer Jamie Turton (by e-mail)

5